UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEO RAYMOND,

    Plaintiff,

v.   Case No. 06-CV-14813

COMMISSIONER OF  DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S CORRECTED REPORT AND RECOMMENDATION**[1]

**I.   RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.   REPORT**

    **A.   Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the

---

[1]This second report and recommendation contains no substantive changes from the first, but merely corrects several typographical errors.

Commissioner's decision denying Plaintiff's claim for disability insurance benefits. This matter is currently before the Court on cross motions for summary judgment. (Dkts. 8, 14.)

Plaintiff was 50 years of age at the time of the administrative hearing. He has eleven years of formal education. (Tr. at 15.) Plaintiff's relevant work history includes 26 years' work for General Motors at various production jobs. (Tr. at 65-72.)

Plaintiff filed the instant claim on September 24, 2003, alleging that he became unable to work on July 17, 2001. (Tr. at 41.) The claim was denied at the initial administrative stages. (Tr. at 14.) On October 20, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") Bernard A. Trembly, who considered the case *de novo*. In a decision dated December 28, 2005, the ALJ found that Plaintiff was not disabled. (Tr. at 11-20.) Plaintiff requested a review of this decision on January 12, 2006. (Tr. at 7-8.)

The ALJ's decision became the final decision of the Commissioner on August 24, 2006, when the Appeals Council denied Plaintiff's request for review. (Tr. at 2-4.) On October 25, 2006, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts

relevant to an application for disability benefits. A federal court "may not try the case *de novo* . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v.*

*Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

D. **Administrative Record**

Evidence contained in the administrative record and presented to the ALJ indicates that spirometry tests of Plaintiff's pulmonary function taken in April 2001 were normal. (Tr. at 115.)

An MRI of Plaintiff's cervical spine taken in early October 2001 showed "minimal" misalignment at the C5-6 and C6-7 levels causing "minimal ventral extra-dural defects." (Tr. at 101.) No evidence of disc herniation was seen. (*Id.*) An MRI of Plaintiff's right wrist joint taken in late November 2001 detected no abnormalities. (Tr. at 102.) An MRI of Plaintiff's lumbar spine taken the same day showed a small broad-based herniation at the L5-S1 level and a small central bulge of the L4-5 disc. (Tr. at 103.) An electrocardiogram examination of Plaintiff's heart taken in January 2002 evidenced "minor changes" and was considered "borderline normal." (Tr. at 104.)

Beginning in August 2001, at the request of Dr. Natzke, Plaintiff was seen on a number of occasions by Dr. Jeffrey Levin, M.D. Dr. Levin reported mild weakness in some shoulder muscles as well as weakness and positive orthopedic signs in both wrists. (Tr. at 105.) Positive orthopedic signs were also seen in both elbows. (*Id.*) In April 2003, the doctor reported that Plaintiff's employer had not honored his suggested work restrictions and that working "on a regular job" was causing Plaintiff difficulties which ultimately resulted in Dr. Natzke recommending that Plaintiff discontinue his work. (Tr. at 107.) Dr. Levin again reported "some weakness" in the shoulders, as well as more significant weakness in Plaintiff's hands. Although electromyography testing was negative for carpal tunnel syndrome, the doctor reported that "clinically he appears to have it." (*Id.*) The doctor also reported "some pain" with straight leg-raising maneuvers. (*Id.*) The doctor also adjusted Plaintiff's medications. In late May 2003, Dr. Levin noted that during the time Plaintiff returned to work, he experienced increased back pain as well as a progression of the symptoms in his hands. (Tr. at 110, 112.) The doctor stated that "[d]ue to the persistence of problems that persist while working, I will take you out of work again and refer him to physical therapy." (*Id.*)

In mid-October 2003, Dr. John Di Bella, M.D., forwarded a report to Dr. Natzke. He stated that Plaintiff could walk approximately one block and could perform "only moderate levels of physical activity without discomfort." (Tr. at 122.) The doctor stated that Plaintiff gained some relief from reclining and the application of heat. Noting that Plaintiff had not previously had any physical therapy, the doctor stated that he planned to proceed with cervical epidural steroid injections. (Tr. at 123.)

In mid-November 2003, Dr. Gerald Natzke, D.O., forwarded a report to the Disability Determination Service. He noted that he had treated the Plaintiff since 1985. (Tr. at 90.) The doctor diagnosed bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and radiculopathy at the C6-C7 and L5-S1 levels of Plaintiff's spine. (Tr. at 91.) He reported that the range of motion in Plaintiff's neck was 70% of normal and side bending was limited to 45 degrees. (Tr. at 87.) Although Plaintiff reported pain, his range of motion in his lumbar spine was 80 degrees forward flexion, normal in rotation, and 45 degrees side bending. (*Id.*) The doctor reported that Plaintiff experienced sensory loss in his hands over the last five years and that fine motor control in his hands was poor. (*Id.*) Plaintiff was able to walk normally on his heels and toes, squat, climb stairs, and get on and off the examining table slowly. (*Id.*) On a scale of zero to five, with zero being complete loss of strength and five been normal strength, the grip strength in Plaintiff's left hand was rated at two and in the right hand at three. (Tr. at 88.) Later in the same report, the doctor stated that the grip strength in Plaintiff's right hand was 60% of normal and, in the left hand, 40% of normal. (Tr. at 89.) The doctor stated that Plaintiff could not open a jar with either hand, but could button his clothes, write legibly, hold a pencil, and pick up some small objects. (*Id.*) The doctor reported the loss of gross dexterity in the hands. (*Id.*) The doctor felt

7

that Plaintiff could undertake "more sedentary non-forceful activities that do not require rapid repetition [.]" (*Id.*)

In late October 2005, Dr. Levin forwarded a "Medical Source Statement (Physical)." (Tr. at 140.) He stated that Plaintiff could lift ten pounds occasionally, less than ten pounds more frequently, stand and walk for at least two hours, and sit continuously for about six hours. (*Id.*) The doctor also stated that Plaintiff faced severe restriction in his ability to use his upper extremities and a moderate restriction in the use of his lower extremities. (*Id.*) The doctor felt that Plaintiff's impairments could disrupt a regular job schedule two hours a day. (*Id.*)

### E. ALJ's Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 19.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ, using the Medical-Vocational Rules, denied benefits, concluding that Plaintiff retained the ability to undertake sedentary work. (*Id.*)

### F. Review of ALJ's Determination

### 1. Legal Standards

The ALJ found that Plaintiff possessed the residual functional capacity to return to sedentary work. (Tr. at 19.) According to the Code of Federal Regulations,

> [s]edentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling ("SSR") 83-10 further clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. More specifically, Plaintiff argues that substantial evidence fails to support the ALJ's determination that Plaintiff had no non-exertional impairments and that he further erred in his application of the grid rules at step five of the Commissioner's disability analysis. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In making the determination at step five, the Commissioner can carry the burden by the use of the grid or by expert testimony. In many cases, use of the grid may direct a finding of "disabled" or "not disabled" based on the claimant's age, education, and transferable work skills. 20 C.F.R. § 416.969; *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). If any of the findings of fact do not exactly coincide with the grid's definitions, the grid is used only as a guide. *Kirk*, 667 F.2d at 528; *see also* 20 C.F.R. § 416.969. In cases where the grid is not used to direct a finding of "disabled" or "not disabled," expert testimony is required to satisfy the Commissioner's burden of proof at step five. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1981).

In cases where the claimant suffers from nonexertional limitations in addition to exertional limitations, the use of the grid may or may not be appropriate. The regulations recognize that a claimant may suffer from both exertional and nonexertional limitations.[2] *See* 20 C.F.R. § 416.969a. The use of the grid to help make a disability determination for a claimant who has both exertional and nonexertional limitations has been approved by the Sixth Circuit under certain circumstances, i.e. if the nonexertional limitation does not significantly limit the ability to do a full range of work at the appropriate residual functional capacity level. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kirk*, 667 F.2d at 528. *See also* 20 C.F.R. § 416.969a(d). If, however, the claimant's nonexertional impairment is found to significantly limit the ability to do a full range of work at the designated level, then directly applying the grid is

---

[2]The regulations define "nonexertional" limitations as "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, [which] affect only your ability to meet the demands of jobs other than the strength demands [sitting, standing, walking, lifting, carrying, pushing, and pulling]." 20 C .F.R. § 416.969a(c)(1). Examples of nonexertional limitations include difficulty functioning because of nervousness, anxiety, or depression; difficulty in maintaining attention or concentration; difficulty with understanding or remembering detailed instructions; and "difficulty performing the manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.*

inappropriate and it may only be used as a framework. *Cole*, 820 F.2d at 772; *Kirk*, 667 F.2d at 528-29. In that situation, expert testimony is needed to assist the ALJ in making a determination at step five. *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985); *Kirk*, 667 F.2d at 531.

A mere allegation of a nonexertional limitation is not sufficient to preclude the use of the grid; instead, it must be determined that it is a severe nonexertional impairment. *Cole*, 820 F.2d at 772. If the ALJ discredits a claimant's complaints of nonexertional impairments, the ALJ is not required to consult with a vocational expert and may properly rely on the grid. *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 142 (6th Cir.1987).

After review of this record, and although there is evidence in the record to the contrary, I suggest that the ALJ's decision discrediting Plaintiff's claims of significant nonexertional impairment that limited him from performing a full range of sedentary work is supported by substantial evidence. In his November 2003 report, although noting loss of grip strength in Plaintiff's hands, Dr. Natzke reported that Plaintiff was able to button his clothes, write legibly, pick up objects, hold a pencil in his dominant right hand, and that Plaintiff had a loss of gross dexterity. (Tr. at 89.) More importantly, Dr. Natzke specifically opined that Plaintiff was capable of undertaking "more sedentary non-forceful activities[.]" (*Id.*) Dr. Levin pointed out that Plaintiff's symptoms had worsened, but this was due to his return to work under conditions greater than the restrictions he had recommended. (Tr. at 110.) While Dr. Levin again noted loss of grip strength, once Plaintiff had ended his greater-exertion work, electromyographic testing did not reveal evidence of carpal tunnel syndrome. (Tr. at 107.) In his October 2005 "Medical Source Statement," Dr. Levin again noted diminished grip strength, but also stated that Plaintiff was capable of lifting up to ten pounds, standing and walking up to two hours at a time, and sitting

continuously for about six hours. (Tr. at 140.) Although Dr. Natzke's understanding of sedentary activities binds neither the Commissioner nor this Court, these findings by Plaintiff's treating physicians, I suggest, show that substantial evidence exists on the record for the ALJ's conclusion that Plaintiff's nonexertional limitations were not significant enough to warrant the testimony of a vocational expert.

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is in that "zone of choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ *Charles E. Binder*
                                                  CHARLES E. BINDER
Dated: October 5, 2007                       United States Magistrate Judge

## **CERTIFICATION**

       I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker and on Mikel E. Lupisella, and on District Judge Thomas L. Ludington in the traditional manner.

Date: October 5, 2007         By     s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder